This entire case rests on allegations that a judge was misled to order the temporary removal of children based on child abuse. But there's nothing alleged about the affidavits supporting the removal that was misleading. The affidavits accurately describe a physical injury to a boy, an 11-year-old boy, a black eye, and they recount his explanation of what happened. My mother hit me in the eye after saying, you better get your review paperwork for school. Whatever alternative explanation there may have been for the black eye, that is for the adversary process, not a constitutional challenge to the basis for removal. Okay, but you're jumping, and that's appropriate, but so you aren't saying we should wait for vacate remand because qualified immunity wasn't looked at in the first instance. You're saying, go ahead and dive into the Fourth Amendment Franks issue, and if you reconstruct this affidavit, that's where you want us to go? I'm happy to discuss it. No, what's your favored ruling? If you were writing it, would it be, go ahead and get to the Fourth Amendment and Franks? That seemed to be how you were starting. Yes, Your Honor. The Court has everything that it needs right now on this record to rule for my clients. They are entitled to dismissal. The point about Romero I'd like to address briefly because, of course, in the Romero case, the discussion in that centers on a situation where there was essentially a warrantless removal. I know Romero well. I guess there's a lot in the briefs about the Fourteenth Amendment and the Fourth Amendment, but it seemed to me that pretty much we've said clearly established that if there's a Fourth Amendment violation, that would be a procedural due process violation. So we can simplify the case to that, look at Gates, look at Warnecke too, and just go right to the way you began your argument. If Texas accepts that, that's very simplifying for me. I think that's a fair way to look at this case. Okay. Great. Well, then if we go that route, the issue is putting in what are claimed to be misrepresentations and omissions would — tell me if I'm framing the question incorrectly. If we put that information in for the Texas court that was given the affidavit, is it plausible that there was a Fourth Amendment injury because the four elements of 262.101 might not have been found? It is not plausible. Okay. And if it were plausible, it wouldn't have been able to be resolved at the stage that it was, right? At the motion to dismiss stage? Yeah. No, I — Okay. So you've got to establish that putting all that stuff in that she says was left out still doesn't make it plausible that a Texas court wouldn't have issued that emergency child removal order. I think that — I think that's right. Yeah. Okay. In other words, the plaintiffs would have to point to some misstatement or omission that but for that content, the basis for — You say that the mother, the father, and the sibling all said it was an accident, and yet Ms. Hudson didn't tell the Texas court any of that. Instead, she made the affirmative misrepresentation that the father said, okay, I'll take the kid into a safety protocol with me because of the injury. So that — that looks to me not just omission. That's a false statement going to — you know, how do you respond to that? I respond to that by saying that the plaintiffs still under that reconstructed affidavit doctrine haven't shown that materiality because there's still a core of undisputed allegation, undisputed, that we've got a physical injury to the child that undisputedly happened through some physical encounter with the mother. Why would the three people that weren't given to the Texas court said it wasn't because of an altercation of the mother, it was an accident? Your Honor, I don't think that's the fair characterization of the allegation. Complaint doesn't say that the father, the sibling, and the mother all said it was an accident instead of a deliberate physical abuse? The — the key allegation is the word intentionally is underlined. But no one disputes there was some physical encounter between the mother and the child. And the child, again, made an outcry of abuse. And if we're talking about a — especially a qualified immunity posture where you've got an investigator who's presenting what happened, there's no clearly established law. Well, if we slip the qualified immunity, then we would just let the district court do that in the first instance, possibly. So if we're going to jump ahead, how is it not relevant to tell a court, oh, again, with the four 262 elements, the last one is things other than removal. And yet, if I remember, Hudson's affidavit said every time I went to her, she hid. And yet in the complaint, she says, no, I was at a movie. I wasn't — wasn't there. Well, that — that would seem to me pretty relevant to decide if things lesser than taking it from the mother would be relevant. I mean, facts like that, like where the mother was, I mean, what she is challenging is things that are — are decided through the adversary process, not undermining the basis for probable cause. That's the analogy they want to draw from. Like in the criminal context. We're not looking for probable cause here, though. Well, that's the analogy they want to draw. But we're not looking for probable cause, are we? We're looking for 262-101. I don't think that the law is clearly established that that is what is — is to be done. I think Wernicke 2 is the closest analog, but of course it's unpublished. And in Wernicke 2, the Court said we can look to the reconstructed affidavit doctrine under criminal probable cause and apply it in this case. Well, Wernicke 2 says Fourth Amendment franks, but then the analysis of what has to go into it is Texas Family Code 262-102. And that may — that may be true, but it's an unpublished case. Regardless — But that's what Gates pointed to also. Fair enough. But if — if that's the standard, you would still have to look at something that — that negated the basis for the — those statutory factors. Negated any of the four. But again, the key word, negated. Right. And the plaintiffs haven't brought that to light because you've got the black eye. You've got the child making a call to police, reporting abuse at the hands of his mother. He's got an explanation that he's been hit by the mother. And maybe there is an alternative explanation within the mother's knowledge that she would like to present. But that's not a basis to negate probable cause. It would be like in the criminal context where someone is laying on the street making a complaint to a police officer, you know, I — I've just been beaten up. This person over there beat me up. That goes in the, you know, probable cause affidavit. It would be like faulting that officer for not including the alleged perpetrator's account of what happened and saying, no, no, he just — he fell. I mean, it — it doesn't — just because there's another possible explanation for what happened doesn't negate the basis. But if I — That's hair-splitting. I mean, it's plausible that it would, right? You're saying, Dearborn, that's okay. A complete lie to get the removal about whatever it was, sexual harassment. That's — that's — that's acceptable, whereas here it's not even plausible that saying that three different people said it was an accident, just telling the court that as opposed to the social workers' narrative that, nope, the father agreed. I want to be very clear. We're — we're not saying that what happened in the Morris v. Dearborn case was okay. I think that was very problematic. What happened was a complete fabrication. Right. I know. I think that was — So you accept that? That was not okay, what happened in — I know. But you're saying, therefore, the logic, the Fourth Amendment violation is acceptable there because it was a complete fabrication. But this is something less. And I'm saying, but we're still at a stage where all they have to do is assert a plausible Fourth Amendment injury. That it's plausible that a court would have thought these are material facts that I would like to have known, that if instead of the father saying it was an injury, the father said, I think it was an accident. Again, Morris was not a Fourth Amendment case that had to do with due process, that sort of constant shocking behavior. When you've got a complete fabrication of evidence, that's one thing. This is not a fabrication of evidence case. This is at most a Fourth Amendment question. You've got a father who — I'm not — I don't believe there's any allegation that he observed what happened. And you've got a — another account from the mother who, in this situation, is a very interested party, potentially the perpetrator of the abuse. But let me ask you, are you accepting that there is a possible false statement in this affidavit that the affiant knew about, the statement about what the father indicated? Are you accepting that is a potentially false statement in this affidavit? About the father's knowledge in the — Or whether it was an accident or not. I think what we've said in — what we've said is that you can — you can accept everything that the plaintiffs are complaining about in the affidavit or remove it, as may be the case, and you're still left with enough there. Okay. But you're going beyond my question. I'm just saying, is there a potential false statement in this affidavit? You have argued, in addition, that this is primarily dealing with omissions, that other constructions of what happened were not stated in such that the magistrate would have been aware of it. But is there a potentially false statement in this affidavit? I'm not sure what statement specifically you're referring to, Your Honor. The — Any indications about the father's belief of what happened? Well, the affidavit just recounts personal observations and discussions. And if a plaintiff on the other side is going to say, well, that's not what happened, I mean, that's for the adversary process. That doesn't make it a constitutional violation. There are different things, and you'd have to negate the basis for probable cause. You keep saying probable cause, but it's not. If, for example, the fourth element is what I'm focusing on. Under Texas law, you have to make sure that there aren't lesser alternatives to removal. But Ms. Hudson said, told the Texas court, that the mother agreed that the child should go to the father. And yet, in their complaint, she's saying she didn't. So that goes pretty directly to negating that fourth thing. But it doesn't, Your Honor, because at the end of the day, the allegation is that the social worker wanted the child to go to the father and that that didn't happen. Like, the ultimate thing that needed to happen to prevent removal, it seems to be from the allegations, was that the child, one child, the problematic incident, that there had to be some sort of time with the father for some sort of counseling course. But it didn't happen. There was a, there was, the child was removed. The child is now back in the custody of someone who, by the child's own description,  Regardless, again, if I can turn to the qualified immunity part of the argument briefly, and the question is just the reasonableness of an investigator in this situation. There's certainly no clearly established case law that you can't look at a child who has an obvious black eye and who is telling you, my mother hit me in the eye after saying you better get your paperwork for school, and not look at that situation and think, A, there's a probability that this is some abuse, and look at the other statutory factors. For example, there may be. No one's disputing that you need to remove a child that has been physically abused. The issue is no reasonable officer would think you can lie to a Texas court in order to get a removal order. They know that. They know Franks. That's clearly established law. You've accepted that whole framework. The framework is fine, but it doesn't apply here. And the plaintiffs have not explained or alleged a way that they fall short of Franks. And a reasonable investigator acting in the state's very important interest of keeping kids safe from physical abuse could look at a situation like this and very reasonably say that there is a basis for this temporary removal. There's no complaint about the procedure followed under state law in this case that there's an ex parte order, and then there's a hearing held to confirm the basis for removal. And yes, after that was held, the removal continued for some period of time. But there's no claim that the procedure was not followed. There's no claim that the procedure itself was insufficient to protect anyone's rights. At most, there's an interest in family integrity, but there's also an important countervailing state interest in protecting kids from child abuse. And if you're just talking about the reasonableness of an official like my client, you've got a child who is saying that I've been hit in the eye and whatever alternative facts there may be, none of them negate the basis for that injury, the observed injury. And the plaintiffs have not pointed to any authority that would make that presentation of the facts unreasonable. And they've certainly not presented any authority that would entitle the parent or the alleged abuser to a sort of shading of the facts in a way that would suggest no abuse.  Good afternoon, Your Honors. Edward Rose on behalf of Barbara Marks and her three children. May I please the court? Your Honor, I think the main issue here is the facts. CPS knew that this child was a problem child. He faked comas at school. Barbara Marks was a work for CPS, taking care of foster children until he acted out of line and they took that right away from her because she had a problem child at her house and who needs certain drugs so he doesn't get violent or mad. In this situation, Barbara was in her bedroom with the baby and George was acting up and she tried to push him out of the room and he got a black eye by accident. He called the police. The police came by and told Barbara he should be spanked and told the kid to clean up the mess. That's important. And then all of a sudden we have Ms. Consent to the parent and according to our complaint, he told her it was an accident and she knew he was a problem child. That's very important. She knew this. She knew the minor was a problem child. And then if you look at her affidavit, it's all complete with lies. And one of them was no reasonable efforts to prevent removal. There was no efforts. Physically abusing her son. She loves her son. She was just trying to get him out of the room because the baby was there. And I said in the complaint, the father even said it was probably an accident. And Barbara Marks did not agree to let her child go live with the husband because he was incapable of caring for the child because he never gives him his medication. Now, what's interesting here, why did they take three children, including a baby? Well, instead of rhetorical questions, what would help me is just narrow the constitutional argument down. The district court, we should affirm the district court because you plausibly alleged a constitutional violation and finish the sentence. A violation to what? That the children removed unreasonably in violation of their fourth amendment rights and the mother has a 14th amendment right in the custody and care. Coextensive with the fourth amendment, right? Yeah. And it seems to me Texas or the attorney for Ms. Hudson today is accepting that framework. But the answer is, okay, give me all your omissions and misrepresentations, put them back in the affidavit and it doesn't negate any of the four elements that Texas law requires to remove a child. So why don't you give me the single most important fact that if put back in that affidavit would have meant that 262 wouldn't be? I'm not sure if you, Your Honor. Give me your best one. The best one was she doesn't physically abuse her child. She did not, yeah, physically abuse and she did not cause him a serious injury. Why is that a fact? It seems to me you have from the child, uh, tell Ms. Hudson that it happened a certain way. So we don't know the facts and Hudson doesn't know the facts at that time, or maybe I got the names backwards, but nonetheless, the social worker does. Why is that a fact? It seems to me that it's true. You're not disputing it, that the boy did say this, that he was hit by his mother. Accidentally. That's what we, we alleged on complaint, but I think what's important, Your Honor, if you would have told the court, well, he was hit in the eye, but it was an accident, that court probably wouldn't have issued that ex parte order. And then the other items in there that are important in my opinion, Barbara Marks refused to open the door when defendant Hudson showed up, they weren't even home, they were at the movie theater watching Star Wars. And like I said, Barbara never agreed. They wanted, I guess, Ms. Hudson in her affidavit says she wanted the kids to go live with the father and that Barbara agreed to it. Barbara would not agree to it because her husband is incapable of taking care of the children. And that's one of the main issues. And also, Your Honor. We're talking about the temporary ex parte removal until we can have a hearing, right? There was a hearing. I'm sorry, but we're only talking about the ex parte. Yeah, yes, yes. So I'm the judge and all I know that the child did actually call the police and say, I've been hit. And if I were a judge, I'd say, I'm taking the child out so we can get everybody in here and find out what's happening. Even if I'd known they now say it's an accident, a lot of people persuade their children to say it was an accident. And until I can get the child and get everybody in the courtroom and let's have a hearing, why would you take the risk of leaving the child there? Because the social worker knew, Your Honor, it was an accident and did not disclose that to the- Well, the social worker tells me, the judge, that the parents say it was an accident. I'm not sure. I'm not going to necessarily accept that. As a judge, why would I take the risk? Put the child in safe custody until we can have a hearing. But Your Honor, if they knew the child was a problem child, which is important, they knew because Ms. Marks used to be a foster, she used to care for some of the children from CPS. I have a, let's assume I have a child that's a problem child. I know it's a problem child. That doesn't allow me to abuse my child. I mean, I'm just saying from a judge's perspective, a child has a physical injury and has called the police, has made the allegation, and I don't care what everybody says after the fact until I can have everybody in and sort it out. I'm going to remove that child. And that's just me. Okay. But let me, if I move, when they had the hearing, Ms. Hudson didn't even show up. She was on vacation and there was no hearing. How do you cross-examine an affidavit when the social worker is not there? All we had was Mr. Denton, who basically testified it was a serious injury and it wasn't. That was the only testimony. And what's very important, she got her kids back four months later when a new social worker took over and the new social worker told her, well, we should never have taken your kids to begin with, but you just might want to forget about this and move on. That's how she got her kids back. Not through any court order. They gave the kids back, Your Honor. Well, you're talking about several different events, looking at this chronologically at the ex parte decision to take the children and following up on what Judge Owen was indicating, looking at the affidavit before, I mean, you're saying some things that are wrong about it, but I haven't, and maybe it's an allegation in your complaint, but, but it looks to me on the face of the affidavit, these are truthful statements about what Hudson had been told, what she actually believed or not. I certainly don't know that, but there's evidence to support, and I don't know if you're challenging, it's an important matter, that at that time, there were all the events that Judge Owen's gone on over with, the child contacted the police, said this is what happened, maybe changed the story at some point, but what is relevant in front of the judge? And is there a constitutional violation by not showing all the conflicting points that other people who may have their own interests in what they're going to say, what they had indicated. So where is, just looking at that ex parte hearing, what are you saying is the constitutional violation, not what you think is a false statement in there, but what would have been knowingly false that you have alleged in that affidavit at the time that it was made, in whatever month that was, and when the ex parte removal hearing, or ex parte removal occurred? I would say, Your Honor, making the assertion that she physically abuses her, her, her child. Now, once you hear physically abuses, that's huge. If I was a judge, I would say, take the child. But if she would have said, well, it's not physically, physical abuse, he had a broken eye, and it could have been an accident, maybe it was an accident, this is what I was told by the child, judge might say, well, I won't write the order. I need to consider it. But when you say, make the assertion, physically abusing your child, that's huge for a judge. And it's fair that if you are physically abusing your child, that child should be taken. We are looking at the four elements of 262, correct? Yes. So you're saying the element that would have been negated is the first one, that there was no imminent harm. And had three people been put into the affidavit of saying it was an accident, the judge might have agreed, I don't have enough proof of imminent harm. That is correct, Your Honor. Yes. You're not making an argument as to the fourth element, that there were alternatives to removal? Well, they could have been both, Your Honor. They could have been. I agree with the first one. There's also was alternatives. They should not have been taken. And the alternatives, Hudson didn't give the court the opportunity to consider that because Hudson said the mother agrees it should be removed. Go to the dad. That's contradicted. That was a lie. And because Hudson says the mother was hiding from me, but instead the complaint says that Hudson was away at a movie. So all those things are negating the first and the fourth elements. I believe so, Your Honor. The three children should not have been removed. I know you're saying that. Okay. And I think the district court, the district court basically relied on Morgan versus Swanson, qualified immunity, does not provide officials with a license to involve in this type of conduct. And I agree with that. And we have a lot of law in the fifth circuit. We have the Morris versus Dearborn, where we had a teacher who lied and they took a child away for, I believe a year or two, but here is four months. Yeah, but the point, Dearborn is not, that shocked the conscience, complete fabrication, his argument is here. The kid said I got hit by my mother and lo and behold, he did have an injury. That's correct. That's not at all shocked the conscience, but that's just a really close call. And you want a judge to have all pertinent narratives and information relating to it. It may be a plausible fourth amendment, but it doesn't seem to me a plausible Dearborn shocked the conscience argument. In that respect. Yes. But if, if the social worker is omitting a lot of, a lot of substantial facts. The whole case comes down to did a lot of substantial facts get omitted when you still have the kid saying my mother hit me and lo and behold, there's an injury. That's what it is. Correct. Well, and it may be that, that, that, that isn't a plausible fourth amendment argument, those may have been better things to put in, but they may not negate. Anyway, that's a closer, it's a closer call. And then if, and then your honor, I think the other issue would be, well, okay. Let's say it was a close call for the child who started the problem. Why would you take a baby and why would you take the other child? You know, that's, and using the same, it's the same statements in those affidavits. There was three affidavits filed and they were, they were the mirror image of each other. I think that's another issue. With respect to, um, and, but I still believe there's still a constitutional violation based on this whole episode of a sequence of events and she wasn't even at the hearing to testify. Uh, thus there was no ability to cross examine. Uh, nothing was resolved. There was no issues pinpointed. There was no litigation of it. There was no ruling. The parents were there to testify. This was an accident. They were there. Like I said, this was an accident and we told the CPS investigator it was an accident. But because my understanding is they did not, the hearing was like a minute because the social worker did not show up. This is my understanding of how that court was run that, that day. I don't see why you put that on the social worker. The, the, the parents could have said at that hearing, I want my children back. All of this was lies. We all three agree it was an accident. We were at the movie, whatever. They, they had an opportunity to present that evidence at a hearing. I believe the, the father was not there because they divorced, but... He could have come to the hearing if he, you know, she could have called him. She could have subpoenaed him. They, they had an opportunity for hearing and the judge still didn't give the children back. But they really, there was a hearing on paper, but there wasn't a hearing where, where, because the social worker was on leave. She did not show up. I don't understand how that precludes the mother from saying, I did not hit my child. He now concedes it was an accident. Here's what happened. I can, I will subpoena the father to get his opinion, although he was not an eyewitness, I'm not sure what he could add to it. Why couldn't she have told her story at the hearing? Well, Your Honor, my, my personal opinion is a lot of times you go to state court and if not all the parties are there, they don't really litigate or rule on it. That's been my experience. Well, this was a claim against Hudson. Uh, so what is the, the constitutional validation that Hudson committed at the February hearing, if I got the date right? Well, the, the children were removed. Right. How does this add, I mean, maybe there was a violation, maybe not, back when the initial affidavit was presented. Uh, once the judge gets involved, whether the judge does it well or does it poorly, isn't Hudson's responsibility at an end for any kind of constitutional violation, or if not, uh, sort of explore that with me. Well, Your Honor, if I understand it, yes, she should not have, we believe she has a constitutional violation because she took, she took three children. Right. So tell me why the February hearing doesn't, at least in the effect of her violation, regardless of whether there might be some remedy for that time period. Why isn't all of that somebody else's responsibility? Because Your Honor, it was never litigated and she did not show up. I think that's important. She could have shown up. How does that fit into the fourth and 14th amendment and the case law that we have  read initially in taking the children, what you seem to be talking about are problems in the Texas procedures that are not really Hudson's fault. That, that, that could be, that could be, Your Honor. I understand your comment, but still I think, you know, if, if there was, if there was cause to remove one child, because like Judge Higginson said, it was a close quarrel. But we're, if we're right that there was an intervening cause because a state district court judge got involved and said, you don't, I'm making an ex parte order permanent. There was a period, we're just looking at the time between the, the ex parte taking and that hearing, aren't we? What, that's chargeable to Hudson. Bernie, it was a few weeks, there was, it was scheduled on two days, but nothing happened the first time. It was like within two to three weeks, but I don't understand your question. And I believe you're saying nothing really, like I said, nothing really got ruled on, you know, and . . . Well, assume we disagree with you. Okay. No, I understand. I understand. Okay. Just, just assume we disagree with you on it. We're, if we do, we're looking at the time from the time that she swore out that affidavit and there was the ex parte hearing, the children were taken and then there was a hearing, you said there wasn't, anyway, a state district court judge refused to give the children back. That was at least a violation. Okay. If we say there's a cutoff point from the hearing, there's still a one, like a one month delay. Right. Right. That's what we're talking about. There's at least a one month that the children removed and they went with the, with the, with the father and all the, the, well, the two children went with the father, the baby went to a foster home somewhere up in, um, by the Woodlands in Texas. And when she finally got the child back, the child got some problems right now because she was gone for four months and the other two children were moved to a new, different school district. They were bullied. Then when they come back, they, they have some problems readjusting because they were removed from their mother and put into a bad situation with their father who really didn't want them because he couldn't take care of them. That's the issue for that one month. But I see what judge Southwick is saying about possibly cutoff of liability from the time of the ex-party through the, through the time they were, they were removed, but still there was a one month. That has. Just trying to figure out what effect the actual court proceeding had regardless of how it was conducted. Why don't you, got anything else for us? I think Your Honor, the, the law is pretty sound with respect to, uh, uh, making omissions and statements. Frank's, which Your Honor said before, there's also, uh, uh, city and county of San Francisco versus Sheehan, Supreme Court case, 2015. There's also Snell versus Tunnel, 10th circuit case, 1990. And, uh, another one in the Supreme Court, Kalina versus Fletcher, uh, 552 U.S. 118 and 97. In closing Your Honor, basically I think this case should be remanded back to the district court for discovery to commence and trial on the merits eventually. Thank you. I have one more question. Yes, yes ma'am. Before the hearing that didn't occur, were pleadings filed, uh, on behalf of your client that says, this was an accident, I say it's an accident, the child who's injured now says it was an accident, you know, none of what the social worker said was true about, was that put in front of the state district court judge before the hearing? As I recall, Your Honor, but I'm not sure, I don't believe so. She hired some attorneys that filed appeals with the appellate court, but they never got the rule on it because the children were removed, uh, were returned four months later. I'm just asking the district court, the district court judge, what did that judge have in front of him or her? That I don't know, honestly. Thank you Your Honor. Do you have an answer for Judge Owens' question about what was in front of the state judge? What was in front of the state judge at the hearing? What was filed there? Uh, all I know is what was attached to the motion to dismiss in district court, those, those pleadings. I don't think there's something that looks like what Your Honor was describing in those records. I just don't have more information on that. But, um, I think the result of that would be that what's left out there is a child who said, my mother hit me in the eye and has a black eye and called police. And, um, you know, if the court just does this reconstructed affidavit exercise and goes through some of the most important facts, I mean, the most important things that the other side has said are at play, that the mother doesn't physically abuse her children. I mean, I don't think you can add that in a way that would negate the fact that the child has described physical abuse, being hit in the eye, or that it's not a serious injury. These are essentially characterizations. You've got observations, um, personal observations from social workers, from officials, obviously there are, um, there have been advanced different explanations for what happened or things that were within the plaintiff's own mind and own knowledge that they want to fault the social workers for not. Frank's case law, if anything, is a really strict reminder to government officials that before you seize things and people, especially for as long as a month, a child from a parent, you give the court that's going to authorize the seizure, everything positive and negative. You can't just say, well, here's my story that most presents the mother as an abuser, but every piece of contradicting evidence, that's a characterization. It's an opinion. It's not reliable. I'm just not going to tell the court about it because I want to get that order and I want to seize the child. So I think you're very understating the importance of what Frank's does. All this characterization criticism is for a judge to have. It is not for the social worker to weed out what it doesn't believe. It's for a judge to have at the appropriate hearing stage. Here, we're talking about an ex-party order where the judge has to keep children safe based on this core of undisputed allegations. And if a child has a black eye and is telling investigators, my mother hit me in the eye, then you can look at the four statutory factors. What if there happened to be a police officer in the room that saw it and it didn't happen, but the child still said it did happen and the child had a black eye, could the social worker just not put that neutral observer's observation? I suppose there are going to be closer cases like that one. Here we have a sibling and a father and the mother. I mean, this is what you tell judges. And then, then they say, okay, I'll take responsibility. You have authority to remove the child because I've considered everything. They're always going to have authority to seize children if they can excise out anything that's at all problematic. I don't think that's a fair characterization of the allegations here. You have a, the alleged perpetrator of the abuse, so not a neutral witness. Someone, another child who very well may be within the zone of danger herself for the risk of abuse, not a neutral witness. And a father who for all appearances wasn't, wasn't. No one's reliable except the social worker. The child, the child's own description of being an 11 year old boy is saying, my mother hit me in the eye.  And, and thinking that clearly established law requires her to shade or include any of those other pieces of supposed evidence in the affidavit in a way that would suggest no abuse. Again, there may, to your Honor's point about whether there were alternatives for removal, you know, for that brief time, that ex parte order to protect kids from abuse, there, sometimes there just may not be an alternative. And here, I think the Court has focused a little bit on some agreement with the father or allegations that the father was going to take the kid as an alternative. I mean, just look at what's alleged to have happened. Whatever was agreed to or not agreed to allegedly, the kids were not allowed to be with the father. That did not pan out for one way or the other. The kids were still in the mother's possession. And, and looking at that, a judge is left with no conclusion but the fact that children who are allegedly abused are still in the possession of the alleged abuser. Let me ask you about, again, this affidavit back in December. Looking through it, there is nothing, would you agree there's nothing in the affidavit that would cause, raise a question with the magistrate about whether the child was actually hit by the mother? The mother, you know, regardless of what happened and you could read what the affidavit says in different ways, knocked on the door and she did not answer. Maybe she's saying she thought she was there. Maybe she, Hudson was not saying that, but you read through the whole thing. There's nothing inconsistent in the affidavit with the idea that the boy was hit intentionally by the mother. Is that a fair characterization? That's fair. Uh, so what you are arguing for either is clearly established or just as a constitutional issue, uh, generally is that, uh, a social worker in presenting this kind of affidavit can present just the negative information without any concern about a whole array, whether it has to be as strong evidence as my colleague mentioned, a very reputable person who saw it all and disagrees, but regardless, no, you say the law is clearly established or the constitutional violation requires, uh, or allows, uh, the constitution allows, uh, no contrary information or all contrary information to be, uh, left out of the affidavit that every, that we've, that, uh, people in this line of work would know they could do that or would not know they could not do that. I think there, at some level, there starts to be information where it starts to become material, but we're nowhere close to that level of allegation here. Again, because. Now, what do you mean by that? At some stage it would be an obligation, but factually we're just not there. Well, it's, it's that, it's that allegation that, but for something in the affidavit, there would not have been the statutory factors met. And as the plaintiffs, it was their burden to explain what that was. And we've just heard their sort of best facts. Those aren't those types of facts. And it's things like, well, she observed the lights being off. No one came to the door, but we were at the movies. I mean, these are just either characterizations of observations or recounting one, uh, a victim and not including, uh, supposed testimony from people who are interested or didn't observe it. So thank you. Thank you.